# AFFIDAVIT OF SPECIAL AGENT REBECCA LIMAGE IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT

I, Rebecca Limage, state:

## INTRODUCTION

1. I have been a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) assigned to the Boston, Massachusetts Field Office since January 2019. As a Special Agent with IRS-CI, I have conducted multiple criminal investigations involving violations of federal law. I have investigated and assisted other agents in numerous cases involving a variety of criminal violations including tax evasion, money laundering, and wire fraud. I have received on-the-job training as well as participated in IRS-sponsored training courses on these types of investigations. I attended the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in conducting financial investigations and in IRS-CI policies and procedures. I earned a Bachelor of Science Degree in Management from Bentley University in 2006. I also earned a Certificate in Accountancy from Bentley University in 2013.

2. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. I submit this affidavit in support of an application for a criminal complaint charging NDEYE AMY THIOUB with filing false tax returns, in violation of 26 U.S.C. § 7206(1).

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested

1

criminal complaint, and does not set forth all of my knowledge about this matter.

## BACKGROUND

5.  Special Agents from IRS-CI and the Treasury Inspector General for Tax Administration (TIGTA) are conducting a criminal investigation of NDEYE AMY THIOUB, an Internal Revenue Service (IRS) Revenue Agent who works out of the Boston, Massachusetts IRS office. As set forth in detail below, there is probable cause to believe that THIOUB, an IRS Revenue Agent, fraudulently claimed thousands of dollars in false business expenses for at least the tax years 2017 through 2019, which unlawfully reduced her taxable income in violation of Title 26, United States Code, Section 7206(1).

6.  THIOUB has been employed by the IRS as an Internal Revenue Agent since 2006, and she has been assigned to the Large Business and International Division (LB&I) of the IRS since she was hired. In her position as an LB&I Revenue Agent, THIOUB conducts independent field examinations and related investigations of complex income tax returns filed by large businesses, corporations and organizations. THIOUB has extensive and specialized knowledge of accounting techniques, practices, and investigative audit techniques and she examines and resolves various tax issues of individuals and business organizations that may include extensive national and/or international subsidiaries. Throughout her IRS employment, THIOUB has been trained in Advanced Audit Techniques, Corporate Taxation, Tax Law and Ethics. In addition, every year, IRS employees receive training in Employee Tax Compliance, which instructs that "Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those - such as Federal, State, or local taxes - that are imposed by law." Employee Tax Compliance includes timely filing accurate tax returns and

payment of taxes due.

7. THIOUB earned a Master's Degree in Accounting (2005) and a Master's Degree in Business Administration in Financial Management (1993) from the University of New Mexico.

8. According to public records, THIOUB has been licensed in Massachusetts as a Certified Public Accountant since 2010.

9. In addition to her IRS position, THIOUB worked as a Visiting Instructor at Salem State University between approximately 2017 and 2021, teaching Auditing Theory and Practice (Spring 2017, Fall 2017, Fall 2018, Fall 2019, Fall 2020, Fall 2021), Intermediate Accounting (Summer 2019), and Managerial Accounting (Spring 2020). According to the syllabi for these courses, THIOUB has taught college-level classes that included instruction on the verification of records; valuation and analysis of accounts; the importance of financial accounting and financial statements; professional standards; and ethics, professional responsibilities and legal liabilities issues facing auditors.

10. According to IRS records, for each of tax years 2017 through 2019, THIOUB filed an IRS Form 1040, U.S. Individual Income Tax Return (Form 1040) which included a business loss reported on an IRS Schedule C, Profit or Loss from Business (Schedule C).

11. A Schedule C is used to report income or loss from a business the taxpayer operated or a profession the taxpayer practiced as a sole proprietor. An activity qualifies as a business if the taxpayer's primary purpose for engaging in the activity was for income or profit, and the taxpayer is involved in the activity with continuity and regularity. A sporadic activity, a not-for-profit activity, or a hobby does not qualify as a business.

12.     Schedule C business income or loss is reported by the taxpayer on their Form 1040, and impacts the filer's total income and adjusted gross income, and therefore impacts the filer's tax liability.

## PROBABLE CAUSE

13.     In or around May 2019, an IRS-CI Investigative Analyst (IA) with the Boston Field Office began reviewing information relating to taxpayers with large Schedule C losses over a number of consecutive tax years that may have exceeded the presumption test as outlined in Internal Revenue Code (IRC) § 183(d).[1] For example, if a taxpayer had been deducting large Schedule C losses for five or more consecutive years, there was the possibility that the claims were not truly business-related losses, but may instead have been attempts to evade federal income tax liabilities and/or receive tax credits. During his review, the IA noticed that one of the taxpayers with large consecutive Schedule C losses for tax years 2010 through 2017[2] had an IRS Form W-2, Wage and Tax Statement (Form W-2) employer listed as the United States Department of the Treasury. The IA also noted that the Internet Service Provider (ISP) listed for four of the taxpayer's filings was the IRS, and the IA subsequently identified the taxpayer as an IRS employee (THIOUB) and provided the information he had gathered to TIGTA. Thereafter, TIGTA and IRS-CI began investigating THIOUB's tax filings, including the Schedule Cs she

---

[1] A taxpayer is only allowed to claim Schedule C losses for an activity engaged in for profit. As relevant here, IRC § 183(d) provides a presumption that an activity is engaged in for profit if the activity is profitable for three years of a consecutive five-year period.

[2] The tax returns for tax years 2010 through 2016 were filed more than six years ago, and are therefore beyond the statute of limitations applicable to Title 26 tax offenses. Information regarding the out-of-statute returns is included for completeness, and as evidence of THIOUB's intent.

filed with her Form 1040s for several tax years, including 2017 through 2019.

14.     THIOUB's Form 1040s for tax years 2017, 2018 and 2019 indicate that they were self-prepared, and that her filing status was Head of Household. THIOUB electronically filed her returns for 2017 through 2019 using a self-selected personal identification number (PIN). With the PIN, TIBOUB electronically certified that, "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." IRS return summary data shows that THIOUB filed the returns using an online tax program called 1040Now. The Internet Protocol (IP) addresses used to file THIOUB's 2017 and 2018 returns were all registered to the IRS, and the IP address used to file the 2019 return was registered to a relative of THIOUB at THIOUB's home address. Refunds issued by the IRS to THIOUB pursuant to the returns for 2017 through 2019 were all deposited into a Hanscom Federal Credit Union (HFCU) account which at the times of the tax filings was held in THIOUB's name.

15.     For each tax year, 2017 through 2019, THIOUB filed a Schedule C claiming a net loss from a business, which net loss was carried over to her Form 1040s and used to reduce THIOUB's adjusted gross income and ultimate tax liability. On each Schedule C, THIOUB identified herself as "Proprietor," and listed "Sale of New and Used Goods" as the "Principal business or profession, including product or service." THIOUB did not include a business name on the Schedule Cs. On all relevant Schedule Cs, THIOUB provided her home address as the

5

business address, indicated that she used the "cash"[3] accounting method, and certified that she "materially participated" in the business in the relevant tax years.

16.  On the Schedule Cs, THIOUB reported the income and expenses of her alleged business as follows:[4]

| Tax Year | Gross Receipts or Sales | Cost of Goods Sold | Total Expenses | Net Profit or (Loss) |
|---|---|---|---|---|
| 2017 | 14,358 | 33,962 | 23,201 | -42,805 |
| 2018 | 9,875 | 22,786 | 7,413 | -20,324 |
| 2019 | 12,987 | 26,863 | 13,187 | -27,063 |

17.  On the dates set forth below, THIOUB filed Form 1040s for tax years 2017 through 2019, which included the Schedule C losses described above and resulted in the total tax set forth below:

| Tax Year | Date Filed | Wages, salaries and Tips (W-2) | Business Income or (Loss) from Schedule C | Adjusted Gross Income | Total Tax |
|---|---|---|---|---|---|
| 2017 | 4/18/2018 | 99,763 | -42,805 | 56,870 | 4,599 |
| 2018 | 4/12/2019 | 102,580 | -20,324 | 82,281 | 8,689 |
| 2019 | 7/15/2020 | 104,002 | -27,063 | 121,964[5] | 16,866 |

---

[3] Under the cash method of accounting, you include all items of income you actually or constructively received during the tax year, and you deduct expenses in the tax year in which you actually pay them. IRS Publication 538 (January 2022), p. 8.

[4] THIOUB also reported Schedule C losses for the "Sale of New and Used Items" on her 2010 (-$32,788), 2011 (-$43,294), 2012, (-$53,566), 2013 (-$60,464), 2014 (-$53,582), 2015 (-$46,788) and 2016 (-$32,442) Form 1040s, which were filed between March 2011 and April 2017.

[5] As set forth in more detail below, THIOUB took a $45,000 taxable disbursement from a retirement plan in 2019.

18. IRS employees are required to request permission for outside employment. In or around October 2015, THIOUB submitted an outside employment request to the IRS. On the request, she stated that the Employer's Name was "Self," the Address was her home address, and the Type of Business was "Import Export." She further stated that the weekly hours would be 20, and for the description of the outside activity she listed, "IMPORT EXPORT. ONLINE. ACTIVITIES DONE ON WEEKENDS AND AT NIGHT MOSTLY." In 2016, THIOUB submitted an outside employment request for her adjunct faculty position at Salem State University.

19. On or around June 8, 2016, the Town of Swampscott Office of the Town Clerk issued THIOUB a Certificate of Business for a new business named Ndar Ndar Bi Electronics (NNBE). THIOUB certified that NNBE was located at her home address, listed the type of business as "Purchase and Sale of Electronics," and listed herself as the person doing business as NNBE. THIOUB listed the email address for NNBE as ndarndarbielectronics@yahoo.com. The certificate expired in June 2020. I have been unable to locate any filings for NNBE with the Massachusetts Secretary of the Commonwealth. As set forth above, THIOUB filed Schedule Cs with her Forms 1040 for tax years prior to the issuance of the Swampscott Certificate of Business for NNBE.

20. In or around July 2018, THIOUB incorporated Darou Rahma Assistance Project Inc. (DRAP, Inc.) in Massachusetts as a nonprofit corporation, with THIOUB named as the Chief Financial Officer, Clerk and Vice President, and THIOUB's residence listed as the business address. According to the Articles of Organization, the purpose of the corporation is "to address the root causes of the deadly West African illegal migration to Europe and provide

lasting innovative solutions through work readiness education, training and other technical assistance programs, sustainable economic and developmental opportunities, improvement of health, and alleviation of poverty programs." The Articles of Organization further provided, "This corporation is organized exclusively for charitable, religious, educational and scientific purposes…"

21. In or around September 2018, THIOUB incorporated Ndarndarbi Assistance, Inc. (NA, Inc.) in Massachusetts as a nonprofit corporation, with THIOUB named as the President, Treasurer, and Chief Financial Officer, and THIOUB's residence listed as the business address. According to the Articles of Organization, the purpose of the corporation is "to provide essential resources to the underserved communities of Senegal (West Africa) and mostly the people of Saint-Louis (Senegal) also known as Ndar and its surrounding areas and address the root causes of their chronic unemployment and lack of resources." The Articles of Organization further provided, "This corporation is organized exclusively for charitable, religious, educational and scientific purposes…" The IRS determined that NA, Inc. was a public charity and exempt from federal income tax under IRC § 501(c)(3).

22. A THIOUB relative and purported Director of NA, Inc. (NA, Inc. Director 1) testified in February 2022 that THIOUB formed the organization to help underprivileged children in Senegal. NA, Inc. Director 1 further testified that she had lived with THIOUB until approximately December 2021, and that she was not sure whether THIOUB had ever been in the import/export business, nor was she sure whether THIOUB had any source of income besides the IRS and Salem State University.

23. The purported Treasurer (the NA, Inc. Treasurer), Vice President (the NA, Inc. Vice President) and Director (NA, Inc. Director 2) of NA, Inc. testified in February 2022 that they were neighbors and friends of THIOUB, and they had understood that NA, Inc. was a nonprofit organization. The NA, Inc. Treasurer testified that he has known THIOUB for several years as a neighbor, and that he understood that THIOUB worked for the IRS but was unaware of any employment. NA, Inc. Director 2 testified that he has known THIOUB for at least four years as a neighbor, and that he knew she worked for the IRS and Salem State University but was unaware of any other source of income to THIOUB. The NA, Inc. Vice President testified that he had known THIOUB as a friend and neighbor for at least five years, and that he understood her to work for the IRS.

24. A THIOUB relative and purported Secretary and Director of DRAP, Inc. (the DRAP, Inc. Secretary/Director) testified in February 2022 that DRAP, Inc. was a non-profit operated by THIOUB. When asked if THIOUB had any source of income other than the IRS and Salem State University, the DRAP, Inc. Secretary/Director (who has always lived with THIOUB) testified that she did not know.

25. Analysis of THIOUB's known email accounts does not support the existence of a Schedule C for-profit business for tax years 2017 through 2019. Specifically:

   a. According to bank records and IRS records, THIOUB has used the email accounts amythouib1@yahoo.com and amythioub@yahoo.com since at least as early as 2016. Orders were issued pursuant to 18 U.S.C. § 2703(c) and (d) for email header information related to those accounts on January 6, 2023 (for amythioub1@yahoo.com) and January 17, 2023 (for amythioub@yahoo.com). Although investigators have not reviewed the substance of emails

9

contained in those accounts, a review of the header information did not reveal contacts that appeared related to a business between 2017 and 2019.

  b.  As set forth above, THIOUB identified the ndarndarbielectronics@yahoo.com email address for NNBE on her Certificate of Business from Swampscott. Information provided by Yahoo pursuant to a January 17, 2023 Order issued pursuant to 18 U.S.C. § 2703(c) and (d) revealed that THIOUB created the account on or about August 16, 2016. The email header information revealed that the account only held 17 emails; all emails were dated in 2022 and all were messages from Apple or Yahoo administration or mass marketing.[6] Although investigators have not reviewed the substance of emails contained in the account, a review of the header information did not reveal contacts that appeared related to a business between 2017 and 2019.

  c.  According to a brochure for NA, Inc. titled "Fundraising for Elementary School," which promoted fundraising for a school to be built in Senegal by October 2021, NA, Inc. used the email address ndarndarbiassistance@gmail.com. Information provided by Google pursuant to a February 21, 2023 Order issued pursuant to 18 U.S.C. § 2703(c) and (d) revealed that THIOUB created the account on or about November 8, 2018. The email header information revealed that the account only held 39 emails from the 2018 through 2019 time period, some of which were emails to and from the amythioub@yahoo.com account. Although investigators have not reviewed the substance of emails contained in the account, a review of the header information

---

[6] It is possible that emails dated before November 2022 had been deleted from the account before service of the 18 U.S.C. § 2703(d) Order, and it should be noted that agents served a Target Letter on THIOUB in March 2021. However, there were emails dated before November 2022 in the amythioub@yahoo.com and ndarndarbiassistance@gmail.com email accounts, suggesting that the ndarndarbielectronics@yahoo.com account was simply not used.

did not reveal contacts that appeared related to a business between 2018 and 2019. Moreover, an email from verizontaxexemptiongroup@verizon.com on or about October 21, 2019 appeared related to the operation of a charity organization.

26. Analysis of THIOUB's known bank accounts also does not support the existence of a Schedule C for-profit business for tax years 2017 through 2019, and do not reflect dollar amounts for sales, costs of goods sold or expenses THIOUB included on her Schedule Cs for those years. During those years, THIOUB had ten (10) bank accounts:

   a. Prior to January 1, 2016, THIOUB opened four (4) Nusenda Credit Union (NCU), also known as New Mexico Educator's Credit Union, personal checking accounts ending in 6070_1, 6070_2, 5160_1 and 5160_2 (the NCU Accounts). Between 2017 and 2019, total deposits into the NCU Accounts totaled $175,757. The majority of the deposits were THIOUB's IRS salary payments. Deposits also included retail store returns and extraordinary dividends.

   b. On or about March 28, 2016, THIOUB opened three (3) HFCU accounts ending in 9280_1, 9280_12 and 9280_2 (the HFCU Personal Accounts). The HFCU Personal Accounts list the DRAP, Inc. Secretary/Director (and THIOUB relative) as a joint owner. From 2017 through 2019, credits to the HFCU Personal Accounts totaled $296,482 and consisted primarily of payroll checks from the IRS and the Commonwealth of Massachusetts (*i.e.,* Salem State University) to THIOUB. The deposits also included a $104,523 check from a law firm (2017) which I believe, based on my review of Massachusetts state court records, was a tax-exempt settlement payment related to a personal injury lawsuit filed by THIOUB. Deposits further included payroll checks to NDA, Inc. Director 1, checks payable to THIOUB from the DRAP, Inc. Secretary/Director for personal and household bills, merchandise credits, Flexible Spending

Account reimbursements, a Thrift Savings Plan loan in the amount of $46,950 (2017), a Thrift Savings Plan distribution in the amount of $36,000 (2019)[7], a medical payment in the amount of $4,441, and interest refunds.

      c.      On or about June 8, 2016, THIOUB opened two (2) HFCU business checking accounts ending in 3040_1 and 3040_2 (the NNBE Accounts), using the business entity name Ndar Ndar Bi Electronics (*i.e.,* NNBE), with THIOUB's home address as the business address. Between 2017 and 2019, the deposits into the NNBE Accounts totaled $2,343 and consisted of two (2) cash deposits and one (1) check for $1,000 made payable to THIOUB from NDA, Inc. Director 1 with the memo "plane tickets."

      d.      On or about December 6, 2018, THIOUB opened HFCU business checking account ending in 8580 for the nonprofit corporation NdarNdarbi Assistance, Inc. (*i.e.,* NA, Inc.). THIOUB provided HFCU with an IRS Notice listing NA, Inc.'s Employer Identification Number and reflecting her election that NA, Inc. be treated as a nonprofit organization. Between 2018 and 2019, deposits into the NA, Inc. Account totaled $840, and consisted of four (4) checks labeled as charity donations.[8]

---

[7] The Thrift Savings Plan is a retirement savings and investment plan for Federal employees and members of the uniformed services. The Thrift Savings Plan loan to THIOUB in 2017 was not taxable income, but the distribution to THIOUB in 2019, which was in the amount of $45,000 ($9,000 was withheld by the Thrift Savings Plan for taxes) was taxable income to THIOUB and was included in her adjusted gross income on her 2019 Form 1040.

[8] On or about August 1, 2014, THIOUB's relative, NA, Inc. Director 1, opened an HFCU account ending in 2090 and listing THIOUB as a joint owner. Based on my analysis of the account activity, I believe it is used only by NA, Inc. Director 1.

27. Grand jury subpoenas were issued to DRAP, Inc. and NA, Inc. for financial records for the time period January 1, 2016 to September 2023. An attorney representing both entities provided monthly account statements for the HFCU business checking account in the name of NA, Inc. and ending in 8580 from December 2019 to August 2023. To date, DRAP, Inc. has not provided responsive records.

28. On or about March 25, 2021, investigators served THIOUB with a grand jury target letter. THIOUB filed a Form 1040 for tax year 2020 on or about May 16, 2021, and did not include a Schedule C. Likewise, THIOUB filed a Form 1040 for tax year 2021 on or about April 18, 2022, and did not include a Schedule C.

29. My review of THIOUB's bank records revealed some expenses that could be consistent with an import/export or resale business. For example, THIOUB and her children had access to a storage unit for which THIOUB made monthly payments, and THIOUB made multiple purchases between 2017 and 2019 at thrift stores (totaling approximately $12,000) and at Costco (totaling approximately $7,000).[9]

30. However, there is no evidence that THIOUB operated a for-profit business, and therefore she was not entitled to claim these expenses on a Schedule C. Further, the total amount of debits for thrift stores and Costco which could conceivably be attributed to a resale or

---

[9] The NA, Inc. Vice President testified that he understood that THIOUB had a storage unit, and that he would see THIOUB and her relative moving things in and out of THIOUB's residence from the storage unit "after a shopping day." The NA, Inc. Vice President also noted that THIOUB once bought twenty-five beach umbrellas from Costco and he paid her $25 for one of the umbrellas.

import/export business are a fraction of the cost of goods sold and other expenses claimed by THIOUB on her Schedule Cs for the relevant time periods.

        31.      Based on the foregoing, I respectfully submit there is probable cause to believe that THIOUB willfully made and subscribed IRS Form 1040s for tax years 2017 through 2019, which contained or were verified by a written declaration that they were made under the penalties of perjury, and which she did not believe to be true and correct as to every material matter. Specifically, THIOUB underreported her Form 1040 Total Income by approximately $42,805, $20,324, and $27,063 for tax years 2017, 2018, and 2019, respectively. THIOUB's understatement of her Total Income resulted in an additional tax due and owing of approximately $9,497, $4,519, and $6,495 for tax years 2017, 2018, and 2019, respectively, for a total of approximately $20,511.

CONCLUSION

32.    For all of the reasons stated above, there is probable cause to believe that between in or about April 2018 and July 2020, in the District of Massachusetts and elsewhere, THIOUB filed false tax returns, in violation of 26 U.S.C. § 7206(1).

Respectfully submitted,

REBECCA LIMAGE
Special Agent
Internal Revenue Service – Criminal Investigations

Subscribed and sworn to by telephone on **Mar 18, 2024**
Date

11:17 a.m.

DAVID H. HENNESSY
United States Magistrate Judge

15